CAMERON MILL AND ELEVATOR COMPANY V. B. E. ANDERSON.

Decided January 9, 1904.

**1.—Evidence—Value of Services of Nurse.**

It was not competent for a physician to testify as to the value per day of the services of a nurse, who was not a professional nurse, where such physician was not a nurse himself, had never employed one, had no personal knowledge on the subject, and the basis of his opinion was what a few professional nurses had told him.

**2.—Personal Injury—Basis of Damages—Minor.**

In an action of damages for personal injury to a boy it was competent to prove that he was obedient, industrious, economical and sober and that he did not use intoxicants or tobacco, as relating to the issue of his probable earning capacity and his continuity or expectation of life, but his moral character in a purely ethical sense was not relevant to the issues.

Appeal from the District Court of Tarrant. Tried below before Hon. Irby Dunklin.

*R. W. Flournoy* and *George Thompson,* for appellant.

*W. R. Parker, Capps & Cantey,* and *Theodore Mack,* for appellee.

CONNER, CHIEF JUSTICE.—In this case appellee sued for the loss of the value of services of her minor son, F. M. Anderson, resulting from injuries received by him in falling into an unguarded excavation in an unlighted street in the city of Fort Worth, made for the appellant company by an independent contractor, and for the value of services in nursing and for expenses of medical treatment rendered necessary by reason of said injuries. The trial resulted in a verdict and judgment for appellee in the sum of $7500.

The circumstances leading up to and attending the injury and that relate to the undertaking of the independent contractor are stated in the opinion, not yet published, in the companion case of the Cameron Mill and Elevator Company v. F. M. Anderson, decided by us on December 19, 1903, 2 Texas Law Journal, 432. We also there give our conclusions to the effect that appellant is liable under the circumstances for the negligence of its independent contractor in leaving the pit in question unprotected, and hence these matters need not be here repeated. We therefore overrule all assignments of error involving the vital question of appellant's liability, and devote ourselves to questions presented that pertain to the regularity of the trial, which terminated April 14, 1903.

Appellee, among other things, alleged in substance that at the date of the injuries alleged her said son was 14 years of age; that the value of his services from the date of his injuries to the date of filing her petition was $500; that during the same period liability for necessary medical treatment to the extent of $750 had been incurred, and that the value of appellee's services in nursing her son was $1500. The further allegations in these particulars were, "That in the future plaintiff will be compelled to devote her entire time and attention to nursing and

caring for her said son, and will be compelled to incur great expense in caring for him, and in the payment of doctor's and medical bills, and will also lose the value of the services of her said son, in all to her damage in the further sum of fifteen thousand dollars, for all of which she now sues."

There is evidence to the effect that the minor, F. M. Anderson, was seriously and permanently injured on the night of May 10, 1902, and that his earnings of about $20 per month had been regularly delivered to appellee. There was also evidence tending to show that medicines, medical services and careful and continuous nursing would be necessary as theretofore during the remaining minority of the injured boy, the appellee testifying that her services in this respect were worth $1.50 per day and $1.50 per night. Appellee is not a professional nurse, and but one other witness gave the value of such services. This was a Dr. McMorris, whose testimony is objected to as shown by the following bill of exception: "Be it remembered that upon the trial of the above styled and numbered cause Dr. McMorris, a witness for plaintiff, on direct examination was asked: 'Do you know what the reasonable value of services was for nurses in Fort Worth?' Witness answered: 'I think the rule is about—' Defendant's counsel interrupted with a question. Plaintiff's counsel asked: 'First, do you know?' Witness answered: 'Well, I can tell what I have heard several nurses state.' Defendant's counsel requested that the witness answer the question 'yes or no.' Witness answered: 'I have never hired any—.' Plaintiff's counsel interrupted and asked: 'How do you get your information?' Witness answered: 'Three dollars a day.' Defendant's counsel said: 'We take an exception; the witness has stuck in the three dollars a day in spite of objections.' The court said: 'State first whether or not—you must qualify—whether or not you know the value.' Witness answered: 'Well, I am going to say this: I only know from what I have been told.' Defendant's counsel moved to exclude the answer until the witness was qualified; that he has already answered three dollars a day. The court said: 'I will exclude that if I decide he is not sufficiently qualified; for the present the answer is excluded from your consideration as to the amount.' By plaintiff's attorney: Q. 'Do you know the value of professional services, reasonable and ordinary value of professional nurse in the town?' Objected to; objection sustained. Q. 'Do you know the value of the services of a nurse here, the reasonable value of the services of a nurse?' A. 'I can answer this way: I have never hired any nurse, but I have talked to several, and know what they said their regular price was.' Objected to as hearsay. Court: 'I say the witness should answer that he knows what is customarily paid nurses; I think that would qualify him; I don't understand him to answer it that way.' Q. 'It matters not how you get your information or the information that you have; are you acquainted with the reasonable value of the services of a nurse to care for him?' Objected to because counsel undertakes to say it makes no difference how he got his information. Court: 'I think

the witness has already answered qualifying the question; what he knows about it what he was told.' Q. 'From that information do you know the value of services?' Witness answered: 'Three dollars a day.' Defendant objected because proper predicate had not been laid in the way of qualification. Court: 'Unless the qualification is more extensive, better laid than at the present time, I think the objection is good.' Q. 'Have you made any inquiry; have you had any nurses; know any nursing patients?' A. 'Yes, sir.' Q. 'Do you know what has been paid around, what they charge?' A. 'One young fellow that was—.' Q. 'Need not give the amount. Do you know what they have received for their services?' A. 'I know what they told me; yes, sir, three dollars.' Defendant's counsel: 'We ask your honor to instruct the witness not to volunteer.' Court: 'Don't give the amount.' Witness: 'I didn't know that.' Q. 'Now, without first stating what they have received, I will ask you if you made an inquiry?' Defendant's counsel: 'Does that "three dollars" go in this time?' Court: 'Gentlemen of the jury, you will not consider at the present time the amount the doctor stated.' Q. 'You have been practicing here in Fort Worth?' A. 'Yes, sir.' Q. 'Are there nurses that go around and nurse the sick here?' A. 'Yes, sir.' Q. 'Have you conversed with them about what they received—don't state what they received.' A. 'Yes, sir.' Q. 'Have you had any occasions to employ professional nurses?' A. 'Yes, sir.' Q. 'Have you investigated to find what the usual price for nurses is for the sick, any that you have hired for yourself?' A. 'I can tell you what a fellow told me that waited on Hampton—.' Q. 'No, not that; do you know what nurses reasonably receive?' A. 'Yes, sir.' Defendant objected. Q. 'Now, what is the reasonable value—.' Defendant excepted. Q. 'From what you know, then, do you think you know the reasonable value of their services?' Defendant's counsel: 'It is not a question of thinking, but of knowledge.' Q. 'Do you know the reasonable value of the services of a person to wait on the sick?' Court: 'Yes or no.' A. 'Yes, sir.' Q. 'Do you, yes or no, without stating what it is?' Court: 'He answered yes.' Witness: 'Well, yes.' Q. 'Well, then, what is it?' A. 'Well, the rule is from two and a half to three dollars a day.' And the defendant then and there excepting, now tenders this its bill of exception and asks that same be approved and made of record in this cause, which is done.''

We have concluded that this witness failed to qualify himself. He was not a nurse himself, had never employed one, and had no personal knowledge on the subject. He seems to have been pressed into stating that he knew, but as a whole it is apparent that the basis of his opinion was what but a few professional nurses had told him, and seems altogether too inconclusive and uncertain. The character of services as to which the witness was interrogated were avowedly professional; and in a city such as Fort Worth, having two or more hospitals and sanitariums, it must certainly be easy to secure many persons who are entirely familiar with the reasonable and customary charges for the services of a pro-

fessional nurse, and we feel unwilling to approve a verdict that, for aught otherwise appearing, rests to a material extent upon testimony of the uncertain character detailed in the foregoing bill of exception. While hearsay may form the basis of receivable opinions as to value (1 Wharton, Ev., secs. 259, 449; Clicquot's Champagne, 3 Wall. (U. S.), 114, L. Ed. Book 18; Fenerstein's Champagne, Id., 121), the inquiries or statements relied upon should, we think, be of such extent and character as to afford a fair inference that the witness had knowledge of the subject. Mr. Rogers, in his work on Expert Testimony second edition, section 152, in speaking of the competency of witnesses on the subject of values generally, says: "Whenever it is desired to have the opinion of a witness on the subject of value, it is always necessary, whether the witness is offered as an expert or not, to lay some foundation for the introduction of his opinion, by showing that he has had the means to form an intelligent opinion." Again, section 159, Id: "As the value of services rendered by lawyers is shown by the testimony of those engaged in the same profession, so the value of services rendered by physicians and surgeons in the practice of their profession is proven by the testimony of their professional brethren. And it has been laid down that one who is not a physician is incompetent to testify as to the value of medical services." P. 384. Id.: "As to the value of services rendered in nursing and caring for the sick, the rule is that the witnesses should be persons who have had experience and nursing and caring for the sick. Physicians and nurses are competent witnesses in such cases." P. 186. But three cases are cited by the author quoted in support of the statement that the opinions of physicians are receivable on the question here involved. In the first, Woodward v. Bugsbee, 4 N. Y. Sup. Ct. Rep., 395, the court say: "We think the question permitted by the referee to be put to Dr. Everett was proper. He had testified that he was a physician; he had fully stated the diseases of the plaintiff's intestate, and that the same were of the most aggravated description, so much so as to be the subject of no standard price; in other words, he had testified that the deceased was so afflicted, and his disease was so loathsome, as to be entirely exceptional." In the second, Reynolds v. Robinson, 64 N. Y. (Ct. of App.), 589, it is said: "The plaintiff was permitted, against the objection of defendants, to prove by Dr. Martin how much, in his opinion, it was worth to dress a cancer each time; also how much, in his opinion, it was worth to take care of and nurse the testator, exclusive as well as inclusive of dressing the cancer; and also by Dr. Moneypenny, how much, in his opinion, it was worth to dress the testator and dress his cancer twice a day for a period of six years before his death. These doctors were not asked to give their opinion based upon the evidence of other witnesses. They had been acquainted with the testator, were familiar with the cancer and its offensive nature, and with the disagreeable service required in dressing it and taking care of him, they knew the value of services required for nursing cancer patients.

Under such circumstances, their estimates of value were competent to be placed before the referee." In the third case, Shafer v. Dean, 29 Iowa, 144, it was held that two witnesses, "one a physician of twenty years' standing, the other one having some experience in taking care of the sick, both knowing the deceased and having heard the testimony in regard to his condition while in plaintiff's house and receiving his care and attention," might, upon the hypothetical case stated, give their opinion of the value of the "board, lodging, care, attention, etc," of the person there mentioned. It is to be noted, however, that in the case before us the opinion of Dr. McMorris, predicated upon personal knowledge of the case and of the services actually performed by appellee in nursing her injured son, was not sought, and we know of no case and none has been cited that goes to the extent of holding that a physician may give his opinion as to the value of the services of professional nurses generally, as a basis of comparison in proving the value of a nonprofessional nurse, as was in this instance evidently the case, where it appears that the source and extent of his knowledge is as indefinite, limited and uncertain as here shown. We conclude that the court committed material error in the particular under consideration, for which the judgment must be reversed.

Numerous other questions are presented which will be disposed of briefly. It is insisted that the court should have sustained appellant's special exception to appellee's petition, because of the generality of the allegations with reference to the damages claimed for the future, the contention being that appellee should show in her petition the amount claimed for each several, distinct element of damage, as for nurse hire, medical bills and loss of services, and not state the same in an aggregate sum, as was done. At least some of us feel inclined to agree with this contention, but we will omit a discussion of the question on the ground that the objection can be easily avoided on another trial. So, too, as to the testimony that the morals of the minor were good. In the companion case before referred to we held that evidence to the effect that he was obedient, industrious, economical and sober, and that he did not drink intoxicants or use tobacco in any form, was relevant to the issue of the minor's probable earning capacity; and we might here add, as tending to show his powers of endurance, and of resistance to pain and injury, viz., on the issue of his continuity of life; but we fail to see that his moral character in a purely ethical sense is relevant to any issue in the case. Lipscomb v. Railway Co., 95 Texas, 6.

Finding no other material question presented by the assignments of error requiring notice, it is ordered that the judgment be reversed for the error discussed, and the cause remanded for a new trial.

*Reversed and remanded.*